By the Court.
The defendant in error, James Morgan, in July, 1918, was convicted in the court of common pleas of Williams county, Ohio, of murder in the first degree, without recommendation of mercy. Motion for new trial was overruled and sentence of death was imposed. On proceedings in error in the court of appeals the judgment of-the trial court was reversed, and the cause remanded for a new trial. On application of the state, this court admitted the case for review.
. The offense for which Morgan was tried and convicted was the killing of Alexander Grant, the conductor of a Wabash railroad passenger train, on which Morgan was a passenger, running between Chicago, Illinois, and Detroit, Michigan. Morgan’s real destination was Detroit, although the ticket which he purchased would have carried *67 him only to Adrian, Michigan, a city about forty miles southwest of Detroit.
The killing occurred at Montpelier, Ohio, a station about forty miles southwest of Adrian. The car on which the conductor met his death was at the time located on a switch, awaiting the arrival of a train from St. Louis, which on the day of the tragedy arrived at Montpelier forty minutes behind its schedule time. The car, so switched, was to be made a part of the St. Louis train.
The main facts in the case may be said to be undisputed.
The defendant, Morgan, some thirty minutes before the arrival of the train at Montpelier, entered the toilet compartment of the car on which he was riding, and remained there until its arrival at Montpelier, and perhaps twenty minutes longer while the car was there stationary. He had been self-confined in the toilet room very near an hour immediately previous to the killing.
The judgment of the common pleas was reversed by the court of appeals, not for any error of the trial judge in the admission or rejection of testimony, nor for any error in the charge to the jury, but on the sole ground that the evidence in the cause was insufficient to warrant the jury in finding that the necessary ingredient of first degree murder, to-wit, deliberate and premeditated malice, existed in the mind of the accused when the fatal shot was fired. The defendant at the trial entered the plea of self-defense.
*68 •A careful reading and consideration of all the testimony in the case leads the court to differ very widely with the court of appeals on the subject of deliberation and premeditation. Indeed, we are persuaded by the testimony of the accused that this necessary ingredient was undoubtedly present at the moment of the killing.
It appears that the accused had visited the toilet compartment quite a number of times between Chicago and Montpelier, each time carrying with him a little satchel.
While it is very doubtful, it may be granted that these visits were for a lawful purpose. On the occasion of the last visit to the toilet, and after he had remained there over thirty minutes, the conductor of the train knocked and called on the occupant Morgan to unlock the door and come out. This demand elicited no response. The conductor, in the discharge of his duty, after vainly attempting some two or three times to persuade Morgan to retire, finally left the car and repaired to a restaurant in the station where he obtained his evening meal.
In the meantime things were occurring in the toilet room that furnish the conclusive proof of premeditation on the part of Morgan. He prepared- to do the very thing that resulted in the conductor’s instant death. In the first place he removed from the satchel a leather belt and holster, which he strapped about his body. He next took a loaded revolver from the satchel and placed it in the holster. At this moment he had on his person over forty cartridges. Such was the preparation .of the defendant immediately after he had been *69 commanded to unlock the toilet room door, and while the conductor was eating.
These things occurred about fifteen minutes before the killing. When asked why he took the belt,' holster and pistol from the satchel, his reply was “I put it on because I was expecting trouble.” He also testified that he was aware of the fact that the conductor had charge of the train, and also that he knew that it was the conductor who had knocked át the door and demanded admission.
It is clear, therefore, that his expectation of trouble was with the conductor and that the trouble he anticipated was to ensue on account of his refusal to unlock the door.
The record discloses the fact that a few minutes before the killing Morgan was seen standing’ on the toilet, demonstrating that if his entrance into the compartment was for a lawful purpose, then, that purpose having been accomplished, his conduct in continuing to remain therein and his obstinate refusal to retire or make answer to the demand of the conductor to unlock the door present a picture of a man bent on mischief.
In the light of the event that followed, the jury had the right to conclude that Morgan had reached the decision that rather than come out of the toilet he would kill the officer in charge of the train. No other conclusion was possible. No one had harmed or threatened to harm him up to 'this moment. He testified that there was nothing to prevent his unlocking the door and coming out. Neither while in the toilet room, preceding the tragedy, nor on the witness stand, did he vouchsafe any explana *70 tion why he would not obey the request of the conductor to vacate.
He realized that force would be used to eject him, and he prepared to resist to the death such force as might be employed.
On his return to the car, after an absence of fifteen or twenty minutes., the conductor again knocked on the door and commanded the occupant to come out, saying: ‘‘You have a ticket to Adrian, the toilet is for public use. You cannot ride in there.”
Again no response from within. The conductor then went to another car and secured a revolver from an express messenger. Over the toilet room door was glass, set at an angle of about forty-five degrees,- slanting from the door to the roof of the car. By standing on the back of a seat, and gripping with one hand an air valve and holding to it, and with the other hand gripping the offset over the door and just beneath the glass, it was possible for one to hold himself up and look through the glass. This the conductor, with the revolver in his right hand, attempted to do. As he raised himself to get a view of the interior of the toilet, the revolver in his hand was visible to the occupant. The revolver was to be seen from within before the head of the conductor was visible. The very instant the conductor’s face appeared at the window a shot was fired from a pistol in the hands of Morgan, striking him squarely in the middle of the forehead and killing him instantly.
The conductor, previous to this final effort to persuade Morgan to unlock the door, had made *71 three unavailing efforts of the same character, and, on one occasion, had taken the same position he was in at the time of the shooting, pleading with Morgan to come out.
The testimony of at least four disinterested witnesses is to the fact that immediately on the conductor’s head appearing at the glass Morgan fired. There is, however, this much of conflict in the evidence, Morgan testifying that the conductor had straightened himself up and had pointed the revolver at him. Morgan claimed that at the time he fired he believed his life was. in danger from the revolver in the hands of the conductor.
In respect to the defendant’s claim of self-defense, it is to be observed that he was wholly at fault, and that it was within his power at the last moment not only to save himself from the danger which he claims was imminent, but to avoid the infliction of harm on the conductor, by the simple movement of unlocking and opening the door. The situation was one of his own deliberate making. A safe and complete remedy was available. He refused to take advantage of it, but persisted in the line of conduct he had mapped out. If his version of the position and attitude of the conductor at the time of the shooting were the true one — and if we were weighing the evidence we would be bound to say that the contrary was made to appear overwhelmingly — still his conduct was such as to preclude the interposition of the self-defense doctrine.
After he had been repeatedly warned that he would have to retire from the toilet, all of which *72 warnings were unheeded by him, it is to be assumed that he expected to be attacked by force of some character sufficient to cause his removal. It was his clear duty to employ all the means in his power to avert the necessity of self-defense. Instead, he prepared for the impending conflict by arming himself with a deadly weapon, and continued to stand his ground.
It has been held in many cases that one cannot avail himself of á necessity which he has knowingly and wilfully brought upon himself.
We feel that'sufficient evidence of premeditation was shown in the case; indeed it is quite infrequent that premeditation is so clearly shown from the very lips of the accused.
We have examined the record with the care that a case of this very great importance demands, and are of the opinion that the defendant Morgan is guilty of deliberate and premeditated murder.
The judgment of the court of appeals is therefore reversed and that of the common pleas affirmed.

Judgment reversed.

Nichols, C. J., Jones, Matthias, Johnson, Wan a maker and Robinson, JJ., concur.